Argued April 30, affirmed May 21, 1952

# McLEAN *v.* GOLDEN GATE HOP RANCH OF OREGON, INC.

244 P. 2d 611

*George A. Rhoten* argued the cause for appellant. On the brief were Rhoten & Rhoten and Sam F. Speerstra, of Salem, and W. A. Wiest, of Independence.

*Bruce Spaulding,* of Portland, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action by Nana Dell McLean, as plaintiff, against Golden Gate Hop Ranch of Oregon, Inc., a corporation, as defendant, to recover damages for personal injuries sustained by plaintiff as the result of alleged negligence on the part of defendant. A judgment of involuntary nonsuit was entered against plaintiff, and she appeals.

Aside from the question of the extent of plaintiff's injuries, the facts are not in dispute. The dispute between the parties arises over the law applicable. The plaintiff was an employe of defendant when she suffered the injuries complained of, and it is her position that the case comes within the provisions of the Employers' Liability Act of this state: ch 16, title 102, OCLA. By the allegations of her complaint and by the evidence she offered on the trial, plaintiff based her entire claim upon the terms of that Act. By its amended answer, defendant denied any negligence on its part, affirmatively pleaded contributory negligence on the part of plaintiff, and also that the injuries sustained by plaintiff were proximately caused by the acts or omissions of a fellow-servant of plaintiff. By her reply, plaintiff denied the new matter alleged in the answer. If the case is governed by the Employers' Liability Act, the defense that plaintiff's injuries were caused by the negligence of a fellow-servant is not available to defendant. § 102-1605, OCLA. Neither is

the defense of contributory negligence, though contributory negligence may be taken into consideration by a jury in mitigation of damages. § 102-1606, OCLA. However, it was conceded by counsel for plaintiff upon the oral argument that, if the facts did not bring the case within the terms of the Employers' Liability Act, then the judgment of the trial court should be affirmed. The nonsuit was granted by the court upon the theory that the Act did not apply. Therefore, we shall first review the facts in the case.

The defendant is an Oregon corporation engaged in the business of growing, harvesting, baling, and selling hops, the location of its operations being in Polk county. In separating the hopberries from the hopvines and leaves before drying and baling the hops, defendant makes use of power-driven machinery. All of this machinery is located in a hophouse, some distance away from the fields in which the hops are grown. An employe whose duties require him to be in the field in connection with the harvesting of the hops, excepting only the motor truck driver, has no occasion whatever to be in, about, or near any power-driven machinery. The picking of the hops by machinery is entirely separate and apart from the gathering of the same in the fields. In conveying the hopvines with the strobiles from the field to the hophouse, defendant makes use of motor trucks. Over the regular bed of the truck is placed an additional bed constructed of lumber, which bed might well be termed a false bed, and we shall so designate it. Toward the front end of the false bed and near the cab of the truck, are installed certain wooden crossbars, with protruding spikes. Near the rear end and on each side of the false bed, there is installed an apparatus constructed of metal pipe and

rods, and having a small platform at the top. This apparatus, known as a "crow's nest", is detachable. The platform is at such height above the bed of the truck as to enable the employe standing thereon to perform his duty as hereafter outlined. In some cases this apparatus is constructed of aluminum; in others, of iron. Upon the motor truck involved in this case, it was of iron construction and weighed from 70 to 90 pounds.

For the benefit of those unfamiliar with the method of growing hops, it might be well to state that the hopvines, as they grow, are trained on wires strung along poles set firmly in the ground, the wires being 15 to 20 feet above ground. In most of the smaller hopyards, the hops, when ready for harvesting, are picked by hand, but in the larger yards it is now the almost universal custom to pick them with power-driven hop-picking machines. The latter operation is, in part, carried on as follows:

One or more employes walk immediately ahead of the motor truck and cut the hopvines near the ground. In the front end of the truck are stationed two employes, known as "lacers". As the front end of the truck reaches the cut vine, it is the duty of a lacer to fasten or lace that end of the vine to the crossbar above mentioned. It is then the duty of the employe in the "crow's nest" to sever the vine at the top. When that is done, the vine drops onto the bed of the truck in a more or less straight line from front to rear. Immediately following the truck and on foot is another employe whose duty it is to gather up the vines which have fallen to the ground. As soon as the truck is fully loaded, it is brought to a stop. The lacers immediately leave the truck, getting off at the front end,

and the employes in the crow's nests climb down from their positions. The crow's nests are then lifted from the metal sockets by which they have been held, and are removed from the truck. The loaded truck is then driven to the hophouse, where the vines are removed and the hops picked by the machinery in question. In the meantime, a waiting truck moves forward. Upon this latter truck, the crow's nests removed from the preceding truck are placed in position, the several employes assume their respective stations, and the same procedure outlined above is repeated.

Plaintiff was employed as a lacer. Immediately prior to the accident involved in this litigation, plaintiff was performing her duties upon a motor truck driven by one Frank Krauger. When the truck was loaded, plaintiff got off it at the front end. While she was standing on the ground a few feet from the truck, she was struck by one of the crow's nests then being dropped "or thrown" to the ground by a fellow-employe, sustaining the injuries of which she complains.

Do the foregoing facts bring plaintiff within the provisions of the Employers' Liability Act? That is the question for decision.

Section 102-1601, OCLA, being the Employers' Liability Act, may properly be divided into two parts, the first dealing with structures, machinery, electricity, dangerous appliances and substances, scaffolding, staging, false work, or other temporary structures, etc., while the second part is generally known as the "and generally" clause, which is as follows:

"* * *. * * * and generally, all owners, contractors or sub-contractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the

public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.''

■ It is obvious that the duties of plaintiff's employment did not bring her within the scope of any of the occupations covered by the specific requirements contained in the first part of the Act. Her work was in no way connected with structures, machinery, electricity, dangerous appliances and substances, scaffolding, staging, false work, or other temporary structures, as defined in the Act. If covered by the Act at all, plaintiff's employment must have been one coming within and contemplated by the ''and generally'' clause. Of course, if the duties of her employment had required her to work with, in, or about the power-driven machinery used in the picking operations, no question could arise as to the applicability of the act. But her duties did not require that.

The growing of hops, like the growing of any farm crop, is an ordinary farming operation. The harvesting of the hops is incidental to the production thereof. Plaintiff was, therefore, engaged in farming operations. Under the Workmen's Compensation Act of this state, farming, and all work incidental thereto, is declared to be a nonhazardous occupation. § 102-1727, OCLA.

Plaintiff's duties under her employment did not require her to operate a motor truck, nor to perform any service in connection with the maintenance, repair, or condition thereof. Even the operation of a motor truck is not a hazardous occupation under the provisions of the Workmen's Compensation Act. § 102-1725,

OCLA; *Hardenbrook v. State Ind. Acc. Comm.*, 148 Or 661, 663, 38 P2d 696.

■ The "and generally" clause of the Employers' Liability Act applies only to work involving a risk or danger; that is, to employments which are inherently dangerous. In *Barker v. Portland Traction Co.*, 180 Or 586, 602, 173 P2d 288, 178 P2d 706, Mr. Justice ROSSMAN, speaking for the court, said:

> "By reverting to the language of the 'and generally' clause, which is quoted in the fourth paragraph of this opinion, it will be seen that it governs employers who have charge of 'any work involving a risk or danger.' Although, as said in Ferretti v. Southern Pacific Co., 154 Or. 97, 57 P. (2d) 1280, all work involves risk and danger, O'Neill v. Odd Fellows Home, 89 Or. 382, 174 P. 148, and Bottig v. Polsky, 101 Or. 530, 201 P. 188, after bestowing careful attention upon the ambit of the words just quoted, held that they apply only to employments which are inherently dangerous. * * * "

■ Ordinarily, the question of whether or not a particular employment is inherently dangerous is for the jury to decide, but where from the established facts the court may say, as a matter of law, that it does not involve risk or danger within the meaning of the "and generally" clause, it is the court's duty to so declare. *Wells v. Nibler*, 189 Or 593, 597, 221 P2d 582; *Williams v. Clemen's Forest Prod., Inc.*, 188 Or 572, 589, 216 P2d 241, 217 P2d 252; *Hoffman v. Broadway Hazelwood*, 139 Or 519, 10 P2d 349, 11 P2d 814, 83 ALR 1008.

■ In *Williams v. Clemen's Forest Prod., Inc.*, supra, Mr. Justice BRAND fully reviewed our prior decisions involving a question similar to that now before the

court. It is wholly unnecessary to repeat that discussion. At page 588 of 188 Or, Justice BRAND said:

" * * * Upon the authority of the latter decision [Barker v. Portland Traction Co., 180 Or 586, 173 P2d 288, 178 P2d 706] we hold that whether a case comes under the provisions of the Employers' Liability Act depends upon whether the deceased was, at the time he was injured, engaged in work involving risk or danger. The contract of employment, the general characteristics of the work, or the fact that an employee was working in a sawmill, may in some cases have a bearing on the question of risk or danger, but none of those factors alone are sufficient to require a holding as a matter of law that the employment of the deceased at the time of injury involved risk or danger. * * * "

And conversely, none of those factors alone is sufficient to require a holding as a matter of law that the employment at the time of injury did not involve risk or danger within the meaning of the Act.

■■ However, in determining whether, as a matter of law, a particular employment does or does not involve risk or danger within the meaning of the "and generally" clause, the most important consideration is the nature and character of the work actually being performed at the time and place the injuries were received and, in particular, the nature of the duties of the injured employe in connection therewith. In considering the question in this case, it is wholly immaterial that the employer in another and separate part of its operations was engaged in the use of power-driven machinery, because, as we have before observed, plaintiff's employment did not bring her in contact with such machinery, either directly or indirectly.

■ We repeat that plaintiff was engaged in ordinary farming operations. None of the work incident to the

harvesting of the hops in the field was inherently dangerous. The performance of the duties of plaintiff's employment was not accompanied by any more risk or danger than is present in any ordinary crop-harvesting operation, or other nonhazardous occupation. It follows, therefore, as a matter of law, that the provisions of the Employers' Liability Act are not applicable to the instant case, and the trial court did not err in entering judgment of involuntary nonsuit.

Judgment affirmed.