Argued May 7, reversed and remanded June 6, 1956

# SNYDER *v.* PRAIRIE LOGGING CO., INC.

298 P. 2d 180

*W. H. Morrison* argued the cause for appellants. On the briefs were Maguire, Shields, Morrison & Bailey, and Howard K. Beebe, Portland, and Yokom & Campbell, John Day.

*Wayne A. Williamson,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Denecke & Kinsey, Portland, and Lytle, Kilpatrick and Schroeder, Vale.

Before WARNER, Chief Justice, and TOOZE, LUSK, BRAND and PERRY, Justices.

TOOZE, J.

This is an action by George D. Snyder, as plaintiff, against Seneca Lumber Company, a corporation, Prairie Logging Co., Inc., a corporation, and Long Creek Logging Co., Inc., a corporation, as defendants, to recover damages for personal injuries sustained by plaintiff as the result of alleged negligence on the part of defendants. A judgment of voluntary nonsuit was entered in favor of defendant Seneca Lumber Company. The jury returned a verdict in favor of plaintiff and against defendants Prairie Logging Co. and Long Creek Logging Co. in the sum of $30,000, and judgment was entered accordingly. The said defendants appeal.

Pending this appeal, the plaintiff George D. Snyder died, and Wanda Snyder, as widow and duly appointed administratrix of the estate of George D. Snyder, deceased, has been substituted as party plaintiff herein. Hereafter in this opinion, when reference is made to "defendants," such reference shall apply to Prairie

Logging Co., Inc., and Long Creek Logging Co., Inc., unless otherwise stated.

All the named defendants are Oregon corporations engaged in extensive logging and lumbering operations in Grant county, Oregon. Subsequent to the accident hereinafter referred to, the defendants Prairie Logging Co., Inc., and Long Creek Logging Co., Inc., merged into Long Creek Logging Co., Inc.

Prior to and on December 6, 1952, defendants were engaged in logging operations on premises owned by Blue Mountain Mills, located approximately 12 miles east of Prairie City, in Grant county, Oregon. They were falling and bucking timber for Blue Mountain Mills. The falling and bucking operations were being carried on in a rough, mountainous, and brushy area. Plaintiff was employed as a log scaler by Blue Mountain Mills, and his duties required him to scale the logs produced by the timber falling and bucking operations of defendants, and while such operations were in progress.

A logging road had been constructed into the area, and at the time of the accident had been extended a short distance beyond the place of the mishap. At the time of the accident work was being carried on in the extension of the road by use of a caterpillar tractor (commonly called a "cat"). The road itself is referred to as a "cat road."

On the morning of the accident plaintiff had gone to the scene thereof with one Shaw. Shaw was to take over plaintiff's duties as a scaler. They parked their car near the end of the road where a jeep had been parked. They scaled a couple logs below the road, and then went to a log lying above the road. Shaw went to the butt of the log, some 75 feet from the road, and plaintiff remained toward the end thereof and approxi-

mately 25 feet from the road. Shaw commenced to measure the log, giving plaintiff the measurements, and plaintiff was in the act of writing them down. Thereupon, a tree was felled, and as it struck some fallen trees, the top broke off and was thrown for a distance of about 15 feet, striking plaintiff and causing the severe and permanent injuries of which he complained.

It is unnecessary to discuss in detail the evidence in the case. Plaintiff knew that fallers were working within 150 yards of where he was located, but he did not see the tree falling, the top of which struck him, nor did he hear any warning that a tree was being felled. For our purposes, the important thing to note is that the evidence was undisputed that when the tree was being felled *no flagman was stationed* to direct traffic on the cat road. We need not note the disputes in the evidence respecting other warnings, etc.

Plaintiff based his action for damages upon the theory that the provisions of the "and generally" clause of the Employers' Liability Act of this state applied: § 102-1601, OCLA (ORS 654.305), and the case was tried upon that theory.

Section 102-1601, in part, provides:

"* * * and generally, all owners, contractors or sub-contractors and other persons having charge of, or responsible for, *any work involving risk or danger* to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices." (Italics ours.)

Defendants' first five assignments of error raise but a single question; viz., whether under the evidence in this case the provisions of the Employers' Liability Act, supra, are applicable. They contend that the court should hold as a matter of law that the Act does not apply, and that the trial court erred in submitting to the jury as a question of fact whether the work in which plaintiff was engaged at the time of his injuries involved risk and danger within the meaning of the law so as to render its provisions applicable.

■■ The "and generally" clause of the Employers' Liability Act applies only to work involving risk or danger; that is, to employments which are inherently dangerous. Ordinarily, the question of whether a particular employment is inherently dangerous is for the jury to decide from the evidence in the case, and it is only in clear cases that the court is authorized to decide, as a matter of law, that the work does not involve risk and danger within the meaning of the "and generally" clause. *McLean v. Golden Gate Hop Ranch*, 195 Or 26, 33, 244 P2d 611; *Barker v. Portland Traction Co.*, 180 Or 586, 602, 173 P2d 288, 178 P2d 706.

■■ Defendants were engaged in logging operations. That is a hazardous occupation. The falling and bucking of trees, dragging the logs to the landing, loading them for shipment, and other logging activities constitute employment of a most dangerous character. The scaling of logs in and of itself is not a hazardous occupation, nor does it involve risk and danger within the meaning of the Employers' Liability Act. But where the scaling is required to be done concurrently with the logging operations, and in the vicinity and as a part thereof, such scaling may well involve risk and danger within the meaning of the law. *Brown v. Underwood Lumber Co.*, 172 Or 261, 141 P2d 527.

Under all the facts and circumstances of this case, we cannot say, as a matter of law, that plaintiff's employment at the time and place of his injuries did not involve risk and danger within the meaning of the "and generally" clause. That was a question of fact for the jury to determine, and it was so submitted by the court in proper instructions.

■ There is substantial evidence of contributory negligence on the part of plaintiff, but contributory negligence is not a bar to a recovery under the Employers' Liability Act; it can only be considered in mitigation of damages. The court fully and correctly instructed the jury on that phase of the case.

■ The serious and vital question in this case arises in connection with defendants' sixth assignment of error. Defendants maintain that the trial court erred in instructing the jury upon certain provisions of the Safety Code applying to logging operations. The Safety Code was adopted by the State Industrial Accident Commission pursuant to statute. ORS 654.035. Its provisions have all the force and effect of law, and a violation thereof in any respect constitutes negligence per se. The court instructed the jury as follows:

"Plaintiff has charged the defendants with violating certain provisions of the Safety Code:

" 'The head faller shall be kept informed of the location of buckers or other workmen placed or passing in the vicinity of trees being felled.'

" 'Fallers and buckers shall be located so they will not endanger themselves or other persons from falling or rolling trees or snags, sidewinders, leaners, logs or other causes.'

" '*A flagman shall be stationed to direct traffic when there is danger in falling a tree adjacent to a railroad, cat road or motor road.*'

" 'Fallers shall give timely warning to buckers and other persons in the vicinity of a tree about to be felled, indicating the direction of fall, and taking notice that such persons are not only out of reach of the tree but also in the clear of logs, fallen trees, snags, or other trees which may be struck by the falling tree. *Fallers shall cease sawing when giving such warnings and make sure that this warning has been heard and heeded by all in the vicinity.'*
If the defendants failed to comply with any of the foregoing provisions of the Safety Code which I have just read to you, this is negligence per se, or negligence in and of itself." (Italics ours.)

We have emphasized the portions of the instruction to which defendants take exception. An alleged violation of each of the emphasized rules of the Safety Code was charged in plaintiff's complaint as negligence, as well as violations of the other rules mentioned in the instruction.

When evidence was first offered during the trial to show that no flagman was stationed to direct traffic as required by the above stated rule of the Safety Code, an objection thereto on the part of defendants was sustained by the court. Later in the trial, however, the evidence was admitted and was not disputed. The instruction of the trial court had reference to this part of the record.

■ We are of the opinion that it was error for the court to submit to the jury as a question of fact the alleged violation of that particular rule of the Safety Code for two reasons: (1) it had no application to the factual situation in this case, inasmuch as plaintiff was not on the road at the time of his injuries, and what he was doing had nothing whatever to do with traffic on the road; and (2) the absence of a flagman to direct

traffic within the meaning of the rule could not possibly have been a proximate cause of plaintiff's injuries.

The purpose of the rule is made plain by the language employed. It is a rule designed solely for the protection of traffic in, upon, and along a railroad, cat road or motor road. It has nothing whatever to do with the protection of others engaged in logging operations, or other activities at places outside of or away from the railroad, cat road or motor road located adjacent to the area where trees are being felled. Other rules of the Safety Code are provided for their protection.

■ The violation of a rule of the Safety Code, although constituting negligence per se, cannot be taken advantage of by a plaintiff who was not within the class of persons sought to be protected by the rule nor the accident which occurred was of the type sought to be prevented. We have said that it is elementary that, if one relies upon a statute for defense, his pleading must contain a statement of the facts that will bring the case clearly within the terms of the statute: *Nichols v. Union Pacific R. R. Co.,* 196 Or 488, 503, 250 P2d 379. In principle, the same rule applies to proof upon the trial. Before the statute may be held to apply, the evidence must show that the party claiming its benefit was clearly covered by its terms. *Burke v. Olson,* 206 Or 149, 291 P2d 759, 762; Prosser on Torts (Hornbook Series) 264, § 39.

No claim was made by defendants on the trial that a flagman had been stationed on the road to direct traffic, and it was undisputed that there was no flagman there as required by the rule of the Safety Code. The effect of the given instruction was to tell the jury that defendants were guilty of negligence per se be-

cause of the absence of such flagman. Under the circumstances of this case it is obvious that the instruction was prejudicial to defendants, and the giving thereof to the jury constituted prejudicial error.

We have not overlooked the other assignments of error asserted by defendants, but deem it unnecessary to discuss them. However, we will note one for the reason that the same question will necessarily arise on another trial of the case. Defendants excepted to the second emphasized portion of the instruction above quoted on the ground that it, in effect, made them insurers of the plaintiff.

In discussing this portion of the instruction, defendants say in their brief:

> "The jury was further advised that the failure to comply with that provision was negligence per se. In other words, the jury was told that if anybody failed to heed the warning, the defendants were guilty of negligence. As counsel stated in excepting to the instruction, 'it is asking something impossible of performance and a guarantee of the safety of employees; and the act does not contemplate that.'
>
> "That the instruction does amount to a guarantee of employees' safety and in effect constitutes defendants insurers, is almost beyond question. It is impossible to conceive of any situation in which an employee could be injured by a falling tree and the employer not be guilty of negligence under this provision. The fallers must not only make sure that everyone in the vicinity has heard the warning, but heeded it. Since 'heed' presumably means something other than 'heard' or there would have been no need to use both words, it can only mean that *the fallers have a duty to make sure that everyone is out of the way of the tree. If someone gets hit by it, they have not fulfilled the duty, no matter what precautions they may have taken.*

"Thus, by this instruction, defendants are made the insurers of any employee, either of themselves or others, who wilfully, negligently or in any other manner gets hurt by a falling tree. Such a regulation is beyond the powers of the Commission. As the court stated in Shelton v. Paris, 199 Or. 365, 372, 261 P.2d 856 (1953):

" 'The statutes go no further than to permit the commission to require certain acts to be done and to provide punishment for the violation of its orders. In other words, it is permitted to establish a standard of care, which includes the requirement that certain safety devices be used, to be followed by an employer, but it is not permitted to change his liability to the employee from that which arises out of the negligence of the employer to that of absolute liability as an insurer. The rights granted the commission merely change the measuring stick by which negligence may be determined.' " (Italics ours.)

Such an interpretation as defendants seek to place upon the rule would indeed render it invalid, but we do not so interpret it. The interpretation must be a reasonable one. It is hornbook law in this state that when a rule such as this (having all the effect of a statute) is equally subject to two reasonable interpretations, one of which would render it valid, while the other would render it invalid, it is the duty of the court to adopt that construction consistent with validity. The rule simply means that timber fallers must cease sawing when giving the warnings required, and shall not continue their operation until they are reasonably certain that all persons within the danger area of the tree being felled have heard the warnings and heeded them. The word "heeded" as used in the rule means "noticed," "observed," "gave attention to," indicated by a look, expression, or act of noticing

on the part of the person to whom the warning is directed. The precautions the fallers must take in this regard are reasonable precautions, but requiring a high degree of care commensurate with the danger involved. As to the persons to be warned, the requirements of the rule go no further than that the fallers shall make sure that warning has been given to all persons known by them to be within the danger area, or whose presence therein could and would be discovered and known by them by the exercise of reasonable precautions on their part. *Wychgel v. States Steamship Co.*, 135 Or 475, 486, 296 P 863, cert. denied 284 US 623. Certainly they are not required to forcibly remove all persons from the danger area; they are required only to exercise due care under all the facts and circumstances attendant at the time and place in question. Whether the fallers have complied with their duty in this respect is usually a jury question and is to be determined in the light of all the facts and circumstances of the case, keeping in mind the high degree of care required in conducting hazardous occupations. An instruction upon this rule of the Safety Code should not be given without explanation. To merely quote the rule without more will tend to confuse the jury.

The judgment is reversed and the cause remanded for a new trial.