Motion to dismiss appeal denied April 13, argued October 31,
affirmed November 23, 1960

## BARTLEY *v.* DOHERTY

351 P. 2d 71
357 P. 2d 521

John H. Kottkamp and Fabre, Collins & Kottkamp,
Pendleton, for the motion.

Charles S. Crookham and Vergeer & Samuels, Portland, contra.

Before McAllister, Chief Justice, and Rossman,
Warner, Perry, Sloan, O'Connell and Goodwin,
Justices.

SLOAN, J.

Plaintiff-respondent has moved to dismiss this appeal. Plaintiff challenges the sufficiency of the service of the notice of appeal on plaintiff. The determination

of the motion requires the interpretation of the statutes specifying the manner in which the notice shall be served. The question is one of importance to the profession.

It is known, of course, that the 1959 legislative assembly made material changes in the statutes regulating appeals. Prior to January 1, 1960, the effective date of the amendment to the statute in question, the statute which governed the service of the notice of appeal was ORS 19.030. It provided that the notice of appeal should be "served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney * * *". The amended statute, which is now designated ORS 19.023 provides:

"19.023. How appeal taken. (1) An appeal to the Supreme Court shall be taken in the manner prescribed in ORS 19.023 to 19.190.

"(2) A party to a judgment desiring to appeal therefrom, or some specified part thereof, shall cause a notice, signed by himself or his attorney, to be served on such adverse party or parties as have appeared in the action, suit or proceeding and file the original, with proof of service indorsed thereon or affixed thereto, with the clerk."

The omission from the new section of the words "or upon his or their attorney" provides the basis for the motion to dismiss the appeal in this case. The notice of appeal was served only on plaintiff's attorney. Plaintiff contends that the statute now requires that the notice be served on the actual party.

Plaintiff acknowledges the existence of ORS 16.770 and 16.800. Section 16.770 provides that:

"16.770. Notices to be in writing; service of notices and papers. Notices shall be in writing, and notices and other papers shall be served on the

party or attorney in the manner prescribed in ORS 16.780 to 16.800, where not otherwise provided by statute."

Section 16.800 makes provision for service upon a party absent from the state and also provides:

"* * * When a party, whether absent or not from the state, has an attorney in the action or suit, service of notice or other papers shall be made upon the attorney if the address of his office is known. * * *"

Plaintiff argues, however, that neither ORS 16.770 or 16.800 apply by reason of the limitations contained in ORS 19.104. That section reads:

"19.104. Service of papers. Except as otherwise provided in ORS 19.023 to 19.190, where ORS 19.023 and 19.190 require any paper to be served and filed, the paper shall be served in the manner provided in ORS 16.780 to 16.800 on all other parties who have appeared in the action, suit or proceeding and who are not represented by the same counsel as the party serving the paper, and shall be filed, with proof of service indorsed thereon, with the trial court clerk. [1959 c. 558 § 27]"

It is plaintiff's theory that the language "Except as otherwise provided in ORS 19.023 to 19.190, where ORS 19.023 to 19.190 require any paper to be served and filed, the paper shall be served in the manner provided in ORS 16.780 to 16.800 on all other parties who have appeared in the action, * * *" of ORS 19.104 requires any paper or notice to be served in the *manner* specified in ORS 19.023 to 19.190 and not otherwise. In other words, plaintiff says we may not look to ORS 16.770 or 16.800 as establishing a manner or method of service but are required to permit notices to be served only as provided by the appeal sections, ORS 19.023 to 19.190.

Plaintiff reads the word "Except" as applying to the manner of service rather than who must be served.

Plaintiff misconstrues the intent of ORS 19.104 above quoted. That section is not concerned with the manner of service, but as to *who* must be served. Notice that ORS 19.023 requires the notice of appeal to be served only on the adverse party or parties and not every party who may have appeared in the case. The same is true of the undertaking on appeal. ORS 19.038. The undertaking, also, is served only on the adverse party or parties. The other papers that may be required on appeal are required by ORS 19.104 to be served on all other parties, adverse or otherwise, except those represented by the same counsel.

It is our conclusion that ORS 16.770 and 16.800 permit the notice of appeal to be served upon the attorney of a party. Motion denied.

**ON THE MERITS**

*Duane Vergeer*, Portland, argued the cause for appellant. On the briefs were Vergeer & Samuels and Charles S. Crookham, Portland.

*John H. Kottkamp*, Pendleton, argued the cause for respondent. On the brief were Fabre, Collins & Kottkamp, Pendleton.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This is an action for personal injuries suffered by the plaintiff while working for the defendant and brought under the Employers' Liability Act of Oregon.

During the year 1957, the plaintiff started working on the defendant's ranch near Pilot Rock, Umatilla county, Oregon.

He was employed to perform general ranch and farm duties, including the use of heavy power-driven machinery, and at a monthly salary of $245, of which $45 was deducted for board and room.

The plaintiff had worked for the defendant almost two years. On April 20, 1959, he was instructed by the defendant to use the defendant's D-6 type of Caterpillar tractor and draw a heavy 10-foot disc to break up a plowed field consisting of approximately 80 acres and located some five miles from the home ranch.

The plaintiff had used the D-6 tractor many times before and was quite familiar with its operation and general condition. The defendant also was familiar with the tractor's condition, particularly with the brakes and steering clutches.

This type of tractor has a main hand lever that controls the general power of the tractor. It also has two additional hand levers, one that operates on and at least partially controls the power on the crawler-type track on each side of the machine. By pulling back on the lever that controls the left side, for instance, it cuts down the power on that side and causes the tractor to swing to the left. By stepping on the brake at the same time, the tractor could be swung or

steered to the left more sharply and more quickly. The same process would apply to the right side by operating the right lever and brake. The power could be entirely cut off or disengaged by using the main lever.

On that date of April 20, 1959, and for some time prior thereto, the seals on the transmission on the tractor were damaged and allowed oil to drip onto the brakes, particularly on the left side. When considerable oil got on the brake bands, they lost their braking power, and it was necessary that it be washed off with gasoline before the brakes would function properly again. There was a plug in the bottom of each of the brake wells through which the gasoline could be let out after it was used to cut the oil off the brakes. If those plugs were left open, the oil could not accumulate enough to affect the brakes seriously, but with the plugs out, dirt and dust were allowed in, which would cause serious damage to the brake bands.

About 5 p.m. on April 20, 1959, the plaintiff was driving around the field at about 5 miles per hour, dragging the disc behind the tractor. He was partially turned to watch the operation of the disc, as was customary. He claims that he glanced forward just as the left track of the tractor was about to strike a rock a foot or more in height. He stepped on his brake and pulled the left lever in an attempt to center and pass over the rock; but he discovered that he had no brake, and the tractor failed to respond. The left tread struck the rock with considerable force, and the plaintiff was thrown around in the seat and his back injured.

He returned to the home place shortly thereafter, reported to the defendant that he was injured and was advised to and did go to a doctor in Pendleton the next day.

The case was tried before a jury in the circuit court of Umatilla county. The defendant moved for a directed verdict, which was denied. The jury returned a verdict for the plaintiff for $25,000 general damages and $4,624.94 special damages. The defendant then moved for judgment notwithstanding the verdict and for a new trial, both of which were denied; hence, this appeal.

The principal question to be determined is whether the case comes under the provisions of the Employers' Liability Act of Oregon.

The first assignment of error is:

"The trial court erred in failing to allow the defendant's motion for a directed verdict and judgment n.o.v., on the ground that the case was not properly maintainable under the Employer's Liability Law."

It is the defendant's theory that the plaintiff's work did not involve risk and danger and that the trial court should have so determined as a matter of law and dismissed the case on the motion for directed verdict.

We are faced first with the question of deciding the proper method of determining this question of risk and danger. Should it be applied to the general farming occupation of the plaintiff, or should it be applied to and decided on the basis of the work and labor actually being performed by the plaintiff at the time of the accident?

■ Many of the recent Oregon cases have passed upon this question, and we hold that it should be and is the rule in this state that the question of whether risk and danger are involved is determined by the specific thing or work being done by the employee at the time of the injury rather than the general name of or general

type of work the employee was originally hired to do. *Barker v. Portland Traction Co.*, 180 Or 586, 173 P2d 288, 178 P2d 706; *Williams v. Clemens' Forest Prod., Inc.*, 188 Or 572, 216 P2d 241, 217 P2d 252; *Wells v. Nibler*, 189 Or 593, 221 P2d 583; *McLean v. Golden Gate Hop Ranch, Inc.*, 195 Or 26, 244 P2d 611; *Snyder v. Prairie Logging Co., Inc.*, 207 Or 572, 298 P2d 180.

Some of the above cases hold that the work engaged in did not involve risk and danger, and some hold that it did; but they are all authority for the principle that it is the specific work engaged in when injured that controls in determining the question of risk and danger, rather than the general name or character of the original employment.

It would seem anomalous that an employee working on a farm and driving a D-6 tractor drawing a farm disc or even a log for domestic wood use, who was injured by reason of some defect in the tractor, would be governed by a different rule than the same employee would be if he were employed by a commercial logging operator and was injured while driving the same tractor, with exactly the same defect, while drawing the same disc for the purpose of improving a logging road, or drawing the same log for commercial purposes, rather than for domestic use as wood. We cannot say that simply because the work was incidental to farming, it did not involve risk and danger.

The defendant also contends that the facts show that the actual work being performed in this case did not involve inherent risk and danger and should be so declared by the court as a matter of law and the case dismissed as not coming under the Employers' Liability Act. The defendant cites *Hoffman v. Broadway Hazelwood*, 139 Or 519, 10 P2d 349, 11 P2d 814. That was a case where the plaintiff-employee slipped

on the floor of the bakery department. The restaurant was held not "a work shop" by this court, and under the facts there was no question to be submitted to the jury, as the work did not involve risk and danger. In that same case the court did say:

> "* * * If it were a matter upon which reasonable minds might differ, it would be a question of fact for the jury to determine." (p 524)

Defendant next cites *Ferretti v. Southern Pacific Co.*, 154 Or 97, 57 P2d 1280. This case did not involve defective machinery or appliances, negligent operation, or failure to provide a safe place to work. It was based primarily on the claim that the work to be performed was beyond the particular employee's physical capacity. This case also holds that ordinarily whether work involves risk and danger is a question of fact for the jury.

■ *Williams v. Clemens' Forest Prod., Inc.*, supra; *Barker v. Portland Traction Co.*, supra; and *Wells v. Nibler*, supra, all hold to the same general rule that ordinarily the question of whether there is risk and danger is a jury question, except where the court can say from the facts, as a matter of law, that risk and danger are not involved. Then it is a question of law for the court. The question of risk and danger is determined by the court only in those cases where the facts are all one way and reasonable minds could not disagree. Ordinarily it is a question of fact for the jury. Willamette L J, Vol 1, No 1, p 95, Application of the "and generally" Clause: "Work Involving a Risk or Danger"; *Poullos v. Grove*, 84 Or 106, 164 P 562; *McCauley v. Steamship "Willamette,"* 109 Or 131, 215 P 892; *Hale v. Electric Steel Foundry Co.*, 183 Or 275, 191 P2d 396, 192 P2d 257; *Snyder v. Prairie Logging Co., Inc.*, supra.

■ The trial court properly submitted the case to the jury on the theory of the Oregon Employers' Liability Act and properly left to the jury the question of whether the work involved risk and danger.

The defendant assigns as error No. 2:

"The Trial Court erred in denying the motion for a directed verdict and judgment n.o.v. on the ground that the plaintiff was barred in his action by the Foreman Defense Rule, ORS 654.315."

ORS 654.315 provides as follows:

"The owners, contractors, subcontractors, foremen, architects or other persons having charge of the particular work, shall see that the requirements of ORS 654.305 to 654.335 are complied with."

This Foreman's Defense Rule and vice-principal rule has been passed upon, thoroughly and fully explained and discussed by this court many times; therefore, a complete rediscussion here is unnecessary. See *Schmidt v. Multnomah Opr. Co.*, 155 Or 53, 61 P2d 95; *Howard v. Foster & Kleiser Co.*, 217 Or 516, 332 P2d 621, 342 P2d 780; *Galer v. Weyerhaeuser Timber Co. et al.*, 218 Or 152, 344 P2d 544.

In *Howard v. Foster & Kleiser Co.*, supra, Mr. Justice Rossman, who was the author of all three of the above-mentioned cases, says:

"* * * It is not possible to assign indiscriminately duties imposed by the Employers' Liability Law to mere laborers and thereby gain relief for employers from responsibility. On the other hand, persons may be invested with requisite authority and thereupon may be charged with the duty of inspection or of performing other functions demanded by the act. Thus, it is not possible for an employer to relieve himself of the statutory duty by merely designating a workman to perform it,

even if the workman does, in fact, assume the duty and at times performs it. * * *

"The Employers' Liability Law clearly contemplates, as we have seen, delegation of authority to foremen, for it makes provision that certain persons, including a 'person having charge of the particular work,' shall be responsible for compliance with the act. Since an employer must have some discretion as to how he will set up his foremen and vice-principals, the duties imposed upon a particular employee may not be exclusively statutory but may be affected by responsibilities assigned to him by the employer. Accordingly, in an instance such as Moen v. Aitken, supra [127 Or 246, 271 P 730], in which the employee was in 'the lowest scale of employment,' it would not have been consistent with the purposes of the Employers' Liability Law to have held that he was charged with supervisory powers of inspection. An employee of that lowly rank was the type of workman whom the act sought to protect."

In the case at bar the defendant pleaded in his further, separate answer and defense as follows:

"That at the time of the accident complained of, and prior thereto, plaintiff was in charge of and employed for the purposes of maintaining the tractor he was operating in a reasonable working condition. That plaintiff failed to perform said duty, and that plaintiff's failure therein was a proximate cause of plaintiff's injury."

■ Assuming that the above pleading properly raises the Foreman's Defense Rule, the burden of proof, nevertheless, is with the defendant to prove that affirmative defense. The proof showed that the plaintiff was receiving the wage of a regular farm hand. There is no proof of any supervisory duties as a foreman in control of any others. He was not given directions or authority to repair the tractor in any manner.

See *Fields v. Fields,* 213 Or 522, 307 P2d 528, 539, 326 P2d 451. It is true he was told how to wash the brakes with gasoline, but was not authorized to leave the plugs out to prevent the accumulation of oil. It must be remembered that the plaintiff, or a reasonable person, would not be expected to wash the brakes until such action was necessary, in other words not until they lost or were losing their gripping power; and the evidence demonstrates no way of determining the condition except by applying the brakes and testing their efficiency.

■ We are satisfied that the evidence submitted is not sufficient to prove that the plaintiff was a foreman or a vice-principal and that the jury properly determined that matter by their verdict. It is a close question whether there was sufficient evidence on that matter even to submit to the jury, and certainly not enough to overrule their verdict.

The one remaining question is raised by assignment of error No. 3 as follows:

> "The Court erred in failing to remove from the consideration of the jury the allegation that plaintiff had been forced to accept money from the Oregon State Welfare Commission in order to sustain himself."

Such an allegation was placed in the complaint on the theory that accepting welfare money and being required to return it was a proper part of special damages.

■ This matter should not have been pleaded in the complaint. However, it was pleaded in the original complaint. The defendant interposed a motion to strike and make more definite and certain against that original complaint, but did not include the above matter therein. The motion to strike was allowed and an amended complaint filed, containing the same welfare

matter. No further motion was filed by the defendant in that regard.

During plaintiff's direct testimony, after three questions had been answered regarding welfare payment, the defendant objected as follows:

"Your Honor, I think this entire matter is improper; anything he receives from the State Welfare has nothing to do with this case. The whole matter is improper, and I move it be stricken, and the Jury instructed to disregard it.

"THE COURT: I think the question is whether or not he lost his income as a result of this accident; the objection will be sustained, and the Jury is instructed to disregard it."

There the matter rested until all the testimony was taken and motion for directed verdict made and denied by the court.

At that time, in addition to moving to withdraw several matters from consideration of the jury, the defendant moved as follows:

"Also, there has been reference in the pleading, but I will ask to withdraw at this time the allegation in Paragraph VIII, starting at line 29, which reads as follows: 'That plaintiff has been forced to accept certain money from the Oregon State Welfare Commission in order to sustain himself, which money plaintiff is obligated to return to said Commission out of any recovery made herein;' for the reason and on the grounds that that allegation should not be in the pleadings and there was no proof on it, anyway, and I ask at this time that it be withdrawn from the pleadings and the jury instructed to disregard it.

"* * * * *

"THE COURT: * * * I think some of the other motions have been waived and should have been taken at the time that the plaintiff's motions to

strike were made and the Court ruled. The thing is an orderly procedure, and the statute provides for motions so you don't have the parties coming and making drastic changes in the complaint at the time of trial. I think that is the purpose of the law providing for the waiving of motions at this time.

"The rest will be denied."

Here the matter again rested until the motion for new trial after verdict.

As mentioned before, the welfare matter should not have been set forth in the complaint; however, the defendant made no attempt to have it stricken or the complaint amended at the proper time and in the regular manner. See ORS 16.100, 16.410.

The court did order the jury to disregard the issue, and it was not necessary to repeat that admonition. If the defendant wished the objectionable material removed physically from the complaint, he should have moved to strike it at the proper time while the issues were being made up and the plaintiff could have filed an amended complaint.

We believe that the defendant was accorded a fair trial and that the motion for judgment notwithstanding the verdict and for a new trial was properly denied.

Affirmed.