**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

GARY GROENEWEG,

    Plaintiff-Appellant,

  v.

JELD-WEN, INC., a foreign business
corporation,

    Defendant-Appellee.

No.   23-35578

D.C. No. 6:20-cv-01030-AA

MEMORANDUM*

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted December 2, 2024
Portland, Oregon

Before:  TASHIMA, NGUYEN, and SUNG, Circuit Judges.

  Gary Groeneweg, a driver for Crete Carrier, was injured while delivering

and unloading windows owned by manufacturer JELD-WEN.  Groeneweg sued

JELD-WEN for common law negligence, negligence per se, and violations of

Oregon's Employment Liability Law (ELL) and the Oregon Safe Employment Act

(OSEA).  The district court granted summary judgment in favor of JELD-WEN on

---

  *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

all claims.  Groeneweg timely appealed.

We have jurisdiction under 28 U.S.C. § 1291, and we "review the district court's grant or denial of motions for summary judgment de novo.  Thus, on appellate review, we employ the same standard used by the trial court under Federal Rule of Civil Procedure 56(c).  As required by that standard, we view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law."  *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988–89 (9th Cir. 2016) (en banc) (cleaned up).  Applying this standard, we affirm in part, reverse in part, and remand.

1.  The district court properly applied the *Yowell* or "specialized expertise and knowledge" doctrine to Groeneweg's common law negligence claim.  *See Spain v. Jones*, 257 Or. App. 777, 783 (2013) (citing *Yowell v. Gen. Tire & Rubber Co.*, 260 Or. 319, 325 (1971)).  While Groeneweg is correct that common law negligence claims in Oregon are normally governed by a more forgiving foreseeability test, that test does not apply where a party has "invoke[d] a status [or] a relationship . . . that creates, defines, or limits the defendant's duty."  *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987).  For example, a defendant who orders work to be done by a third party owes no duty to such third party if the work falls "within a special expertise or knowledge, not shown to have

been had by the person ordering the work . . . ." *Yowell*, 260 Or. at 325.

Here, it is indisputable that JELD-WEN invoked such a "special relationship." Record evidence beyond JELD-WEN's contract with Crete also supports the district court's application of the special relationship exception. Groeneweg's arguments to the contrary are unpersuasive. The exception has never been limited to landowner liability or based on who invokes it. *See, e.g.*, *George v. Myers*, 169 Or. App. 472, 486 (2000) ("*Yowell* itself noted that its analysis applied equally, regardless of whether the defendant was a land owner or a general contractor."); *Yeatts v. Polygon Nw. Co.*, 360 Or. 170, 194 (2016) (emphasizing same); *Spain*, 257 Or. App. at 783–89 (tracking *Fazzolari*'s evolution and collecting cases).

2. Summary judgment on Groeneweg's common law negligence claim, however, was improper because the record raises triable issues of fact about (a) whether the risk presented by unloading windows is obvious and inextricably intertwined and (b) whether JELD-WEN lacks expertise in and control over unloading windows. *See Spain*, 257 Or. App. at 787–88 (outlining *Yowell*'s elements); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–51 (1986) (outlining summary judgment standard).

(a) "The question of risk and danger is determined by the court only in those cases where the facts are all one way and reasonable minds could not disagree.

3

Ordinarily it is a question of fact for the jury." *Bartley v. Doherty*, 225 Or. 15, 24 (1960). Here, the district court found that the risk presented by unloading windows was "obvious" given PB Supply employees' past knowledge of accidents and Groeneweg's experiences with JELD-WEN, which included a pre-trip inspection and an accident in Colorado. But the record shows that the purpose of the pre-trip inspection was only "to make sure [the load] doesn't shift *during transport*." Groeneweg also attested that he could not see the stack of unsecured windows that fell on him during inspection. That stack was obscured from view by a window spanning nine feet long and six feet high. Moreover, while Groeneweg was "hit on the left shoulder" by a window previously, he attributed that accident to snow, not unsafe loading. The extent of his injuries from that incident is also unclear. There is also no evidence that Groeneweg had professional moving or unloading experience or training. It is unclear, too, whether Groeneweg shared the PB Supply employees' knowledge of past accidents. The district court's conclusions thus rested on improper inferences and disregarded evidence raising a genuine dispute of material fact. *See Anderson*, 477 U.S. at 248–49.

The district court also erred in finding that the risk was "intertwined" with Crete's services. *See Bartley*, 225 Or. at 24. While Crete does engage in touch loads and occasionally hires lumpers, the record shows that, in Groeneweg's experience, lumpers are typically only available in grocery stores or distribution

4

centers. Additionally, Groeneweg typically lets recipients unload the trailer in his role as a "national *driver*." And according to his uncontroverted testimony, Crete does not provide any informal or formal training on unloading. Accordingly, a reasonable juror may find that the risk presented by unloading windows is not inextricably intertwined with Crete's services as a carrier. *See Spain*, 257 Or. App. at 790–91 (reversing summary judgment in light of competing "considerations relevant to whether a risk is inextricably intertwined with . . . employer's specialized task").

(b) There is also a genuine dispute about who had "expertise regarding or control over the specialized task" of transporting or unloading windows. *See Spain*, 257 Or. App. at 787–88. Crete was not the only expert or the one in control. First, hiring lumpers was not within the exclusive control of Crete. Lumpers must first be authorized by the customer, who ultimately pays for the services, and then Crete. Second, while it was owned by Crete, the trailer was held and loaded by JELD-WEN employees before pick-up. JELD-WEN also ordered Groeneweg to place its own seal on the trailer, even though Crete had its own enforcer lock. Third, JELD-WEN's policies impose several rules on drivers. These include requiring them to wear specific safety equipment, avoid cut-off shirts or tank tops, and behave professionally at the unloading location. JELD-WEN also tells drivers that they represent their own companies and JELD-WEN itself. Fourth, JELD-

5

WEN has a detailed step-by-step guide on how to load the trailers and which tools to use. It employs a specific supervisor to ensure the proper loading of windows into trailers, and it issues grading sheets for drivers' unloading performance. In sum, there is "evidence supporting" Groeneweg's claim that JELD-WEN "was responsible" and had expertise over the risks of unloading windows. *Spain*, 257 Or. App. at 791. Summary judgment was therefore improper on the common law negligence claim.

3. There is also genuine dispute about JELD-WEN's indirect employer status and liability under the ELL. The ELL "applies not only to direct employers but also to 'indirect employers.'" *Brown v. Boise-Cascade Corp.*, 150 Or. App. 391, 396 (1997). "'Indirect employer' liability under the [ELL] can be premised on any of three disjunctive tests: (1) the 'common enterprise' test; (2) the 'retained control' test; or (3) the 'actual control' test." *George*, 169 Or. App. at 477; *see also Brown*, 150 Or. App. at 396 (applying all three tests). An indirect employer is liable under the "common enterprise" test where: (1) "two employers (the plaintiff's actual employer and a third-party defendant employer) participate in a project of which the defendant employer's operations are an 'integral' or 'component' part"; (2) "the work must involve a risk or danger to the employees or the public"; (3) "the plaintiff must be an employee of the defendant employer"; and (4) "the defendant must have charge or responsibility for the activity or

6

instrumentality that causes the plaintiff's injury." *Sacher v. Bohemia, Inc.*, 302 Or. 477, 486–87 (1987) (cleaned up).

The district court found that only the last two elements of this test were at issue. Citing the fact that JELD-WEN never touched the windows after Groeneweg sealed the trailer, the district court held that JELD-WEN lacked control over the "instrumentality" of Groeneweg's injury—the act of unloading the windows. JELD-WEN, in the district court's view, was therefore not liable under the "common enterprise" theory, even assuming it employed Groeneweg.

The district court erred by focusing only on *un*loading as the "risk-producing activity." Under the common enterprise test, liability arises in "circumstances where both employees of the defendant and employees of the direct employer have *intermingled duties and responsibilities* in performing the risk-creating activity." *Yeatts*, 360 Or. at 180 (simplifying the test); *see also* ORS § 654.305 (imposing ELL liability on "all owners, contractors or subcontractors and other persons having charge of, or responsibility for, *any work involving a risk* or danger to the employees or the public" (emphasis added)). In the joint enterprise of delivering JELD-WEN windows across the country, there cannot be unloading without loading. Only JELD-WEN employees loaded the trailer. JELD-WEN also has extensive guidelines on how to load the windows properly and even employed a supervisor for that purpose—particularly to avoid "more claims" due to "lack of

driver oversight." JELD-WEN also required Groeneweg to pick-up, complete, and follow paperwork regarding delivery. A jury could therefore reasonably find that JELD-WEN had "charge or responsibility" of shipping windows. That JELD-WEN had strict policies on how to load windows to avoid "more claims" arguably demonstrates its knowledge that improper loading could likewise result in "more claims."[1] *See Anderson*, 477 U.S. at 255 ("all justifiable inferences are to be drawn in [nonmovant's] favor").

For similar reasons, the district court erred in concluding that JELD-WEN was not liable under the "right to control test." To be liable, JELD-WEN "must have exercised or retained a right to control the *manner or method in which the risk-producing activity was performed*." *Quakenbush v. Portland Gen. Elec. Co.*, 134 Or. App. 111, 116 (1995) (emphasis in original). The record contains evidence suggesting it did. Summary judgment on Groeneweg's ELL claim was therefore improper.

4. The district court properly granted summary judgment against Groeneweg's negligence per se and OSEA claims premised on indirect employer status. It is well-settled that unlike the ELL, "the OSEA does not extend its coverage to indirect employers, and that, thus, noncompliance with the OSEA

---

[1] This same set of evidence also raises a genuine dispute as to whether Groeneweg qualifies as an employee of JELD-WEN under the common enterprise test.

cannot be the basis for a negligence *per se* claim against an indirect employer." *George v. Myers*, 169 Or. App. 472, 478 (2000) (cleaned up). We decline Groeneweg's request to disturb settled precedent in the absence of a pronouncement by Oregon's highest court. *See AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136 (9th Cir. 2024).

5. The district court did not err by finding that JELD-WEN was not an "owner" liable under the OSEA. A "defendant owner is liable only if the regulation whose violation underlies the OSEA claim is one that either explicitly, or by nature, imposes obligations on owners of premises." *Brown*, 150 Or. App. at 408. Here, the only regulations Groeneweg identifies that *mention* liability for "owners" are ORS §§ 654.015 and 654.022. ORS § 645.015 states "No employer or owner shall construct or cause to be constructed or maintained any place of employment that is unsafe or detrimental to health," while ORS § 654.022 broadly states that "[e]very employer, owner, employee and other person shall obey and comply with" applicable safety and health regulations. Even assuming that Groeneweg is correct that the trailer was a "place of employment," nothing in the record suggests that JELD-WEN was the one who constructed or caused it to be constructed. JELD-WEN may have had control of the trailer in the context of the risk-producing activity and indirect employee analysis. But it is undisputed that JELD-WEN did not actually own the trailer or truck; Crete did. *See Brown*, 150

9

Or. App. at 408 (holding that regulations relating to "work practices or methods, as opposed to requirements pertaining to workplace structures or safeguards, may not apply to owners").  Crete was therefore the one responsible under OSEA for maintaining a safe place of work.  Accordingly, there is no genuine dispute of material fact pertaining to JELD-WEN's status and liability as an "owner" under OSEA.

***

We **REVERSE** the district court's grant of summary judgment against Groeneweg's common law negligence and ELL claims and otherwise **AFFIRM**. We **REMAND** for proceedings consistent with this memorandum.

The parties shall bear their own costs.